**ASSOCIATION OF CITY MANAGEMENT AND PROFESSIONAL EMPLOYEES and John Crapper**

**v.**

**CITY OF PHILADELPHIA, Edward G. Rendell and Phillip Rivera.**

**Appeal of CITY OF PHILADELPHIA; Edward G. Rendell, Mayor and Linda Seyda, Personnel Director, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 1998.
Decided May 20, 1998.

---

Richard Feder, Philadelphia, for appellants.

Gail Lopez-Henriquez, Philadelphia, for appellees.

Before COLINS, President Judge, LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

COLINS, President Judge.

Before the Court is the appeal of the City of Philadelphia, its Mayor, and its Personnel Director (collectively, City) from the decision of the Court of Common Pleas of Philadelphia County granting mandamus relief to the Association of City Management and Professional Employees and John Crapper, Chairman and Trustee Ad Litem (collectively, ACMPE). We reverse.

On July 1, 1986, the City instituted a "Flexible Benefits Plan" for its 4,000 non-represented employees (those not covered by a collective bargaining agreement).[1] The Flexible Benefits Plan allowed employees to select from a group of benefit options with respect to health and medical coverage and life insurance. Some of these options were fully paid for by the City, while others were only partially paid for by the City.

Employees who chose options that were only partially funded by the City could make up the funding shortfall either by payroll deductions from their wages or by the use of "flex credits." Flex credits were generated in a number of ways. For example, employees could trade in unused vacation or sick time or waive certain coverages in exchange for flex credits. In lieu of purchasing unfunded benefits with the flex credits, employees also had the option of converting unused flex credits into cash at the end of the year in a ratio of $1 per flex credit.

In addition to the flex credits that were earned, the City also granted employees a number of automatic flex credits from 1986 through 1992. These automatic flex credits could be used for the same purposes as the earned flex credits, i.e., to buy additional coverages or for cash payments. Due to budget constraints, the City chose to discontinue the granting of automatic flex credits at the end of 1992.

Although a regulation was proposed by the Personnel Director (Director) and approved by the Civil Service Commission (Commission) implementing the Flexible Benefits Plan,[2] neither the automatic flex credits, nor subsequent increases in the amount of automatic flex credits granted, were ever proposed by the Director or submitted to the Commission for approval. Likewise, when the City decided that funding was not available for the automatic flex credits for 1993, the decision to terminate the automatic flex credits was never proposed by the Director or submitted to the Commission.

ACMPE brought a mandamus action in the Court of Common Pleas of Philadelphia County (trial court) seeking to compel City to reinstate the automatic flex credits arguing that City's decision to terminate the automatic flex credits without the approval of the Commission violated Philadelphia's Home Rule Charter and Philadelphia's Civil Service Regulations. After a trial upon stipulated facts, the trial court agreed and granted ACMPE's request for mandamus. The trial

---

1. The present dispute involves the approximately 1,200 employees in this group whose positions fall under the authority of the Civil Service Commission.

2. Philadelphia Civil Service Regulation (C.S.R.) 2.57.

court ordered the City to, *inter alia,* reinstate the automatic flex credits and to pay certain amounts of money to make employees aggrieved by the City's actions whole. City brings this appeal.[3]

■ We reverse because we believe that the City's decision to terminate the automatic flex credits does not violate the Home Rule Charter or the Civil Service Regulations. The Home Rule Charter does not require the passage of a civil service regulation to implement or terminate the automatic flex credits, and no such regulations were ever passed. Furthermore, an examination of the operative civil service regulations illustrates that the City's decision to implement and terminate the automatic flex credits was a financial decision that did not require Commission approval.

The Philadelphia Home Rule Charter sets out the procedure that the Director must follow in order to implement civil service regulations. The regulations are to be prepared by the Director and then submitted to the Commission, and in some situations also to the Administrative Board,[4] for approval.[5] Although the Charter does affirmatively mandate regulations in some areas [6] there is no indication that the Director was required to implement a regulation to implement or terminate the automatic flex credits. In fact, no such regulations were ever passed.

The trial court held that the City violated the Home Rule Charter by not submitting a regulation to the Commission and the Administrative Board to terminate the automatic flex credit program. The lower court premised its decision on the following language in the Home Rule Charter:

> Regulations pertaining to ... *pay plan* and ... *sick leave* shall be submitted by the Personnel Director for approval to the Civil Service Commission and the Administrative Board.

351 Pa.Code § 7.7–400 (emphasis added).

■ There are two glaring problems with the trial court's reliance on this provision to support its decision that the City improperly terminated the automatic flex credits. First, the Commission and the Administrative Board never approved the implementation of the automatic flex credits. Therefore, if we were to accept the trial court's logic, then the granting of automatic flex credits was illegal from its inception. We fail to see how the City's purportedly illegal actions would now have to be regulated out of existence. Second, the automatic flex credits were not really part of the *pay plan* [7] and *sick leave* [8] as these terms are used in the Home Rule Charter. Although unused sick leave could be converted to flex credits, and flex credits could be converted to cash, this did not affect the pay plan (structured levels of compensation) or sick leave (amount of time allowed for illnesses) as these terms are used in the Charter.

Additionally, the civil service regulations also undermine the trial court's holding because, although the Flexible Benefits Plan must be recommended by the Director and approved by the Commission, the granting of automatic flex credits is not part of the Flexible Benefits Plan *per se.* The decision to grant automatic flex credits is financial. The operative regulation is entitled "Flexible Benefits Plan," and it is purely definitional. It defines the "Flexible Benefits Plan" as

> A benefits plan, *recommended by the Director* and *approved by the Civil Service Commission* each plan year, that permits non-represented employees to select

---

3. Our scope of review in mandamus is limited to determining whether the trial court abused its discretion or committed an error of law. *DiVito v. City of Philadelphia,* 144 Pa.Cmwlth. 132, 601 A.2d 397 (1991), *petition for allowance of appeal denied,* 533 Pa. 613, 618 A.2d 403 (1992).

4. The Administrative Board consists of the Mayor, the Managing Director, and the Director of Finance. 351 Pa.Code § 3.3–103.

5. 351 Pa.Code § 7.7–400.

6. 351 Pa.Code § 7.7–401.

7. *See* C.S.R. 2.28 (defining pay plan).

8. *See* C.S.R 21.011 (defining authorized sick leave); *see generally* C.S.R. 21.01–21.18 (discussing sick leave).

health-welfare benefits from among a variety of specified options.

C.S.R. 2.57 (emphasis added).

The regulations further explain how the Flexible Benefits Plan will be financed. The regulations state,

> [T]he City shall contribute, each pay period, for health-medical/life insurance coverage and optional benefits under the City's Flexible Benefit Plan, *an amount determined by the Director of Finance.*

C.S.R. 27.013 (emphasis added).

Reading these regulations in tandem, it becomes evident that the Personnel Director proposes a benefits plan, which the Civil Service Commission may then approve. Thereafter, the decision on funding this plan is in the hands of the Director of Finance.[9] In other words, the Personnel Director is responsible for selecting among various coverage options that will be included in the Flexible Benefits Plan,[10] and the Commission is then given the opportunity to approve or disapprove the Personnel Director's selections. After the Flexible Benefits Plan is proposed and approved, the Director of Finance determines what amount the City will contribute to the cost of the benefits plan. Thus, the trial court's reasoning cannot be sustained because the automatic flex credits were not part of the Flexible Benefits Plan that required Commission approval. They were part of the City's decision to finance the approved Flexible Benefits Plan.

Accordingly, the decision of the Court of Common Pleas of Philadelphia County is reversed.

### ORDER

AND NOW, this 20th day of May, 1998, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed.

---

**9.** We must note ACMPE's contention that the termination of the automatic flex credits was the result of a ten-minute meeting between the Personnel Director and the Mayor's Chief of Staff, and that the Finance Director had no input into the decision. Since this is a non-issue in this case, we believe that it would be inappropriate for this Court to delve into the mechanics of the executive branch of the City to determine who decided to terminate the automatic flex credits. The Mayor, as the head of the executive branch of City, is the person to whom these decisions are ultimately imputed. In any event, any minor procedural irregularity would not alter our disposition of this case.

**10.** For example, the Director could present to the Commission two HMO options, two point-of-service options, and two indemnity plans, as well as dental, optical and prescription plans, which would be offered to those enrolled in the Flexible Benefits Plan.